UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Melvin Gullickson, Frank R.
Hendricks, Terrance Hanson,
and all others similarly situated,

Plaintiffs,

vs.                                          REPORT AND RECOMMENDATION

Teamsters AFL-CIO Local 346,
Duluth Teamsters Building
Association, Inc., the Independent
Union of Paper Mill Workers, and
the John Doe Bonding Company,

Defendants.                              Civ. No. 05-906 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Motion of the Plaintiffs to Remand this case to the

Minnesota District Court where it was originally commenced. A Hearing on the

Motion was conducted on July 7, 2005, at which time, the Plaintiffs appeared by

Daniel W. Shermer, Esq.; and the Defendants appeared Gregg M. Corwin, Esq.

For reasons which follow, we recommend that the Plaintiff's Motion be granted, and that the case be remanded to the Minnesota District Court for the Sixth Judicial District, in St. Louis County, Minnesota.

## II.  Factual Background

The Plaintiffs are members of the Defendant Independent Union of Paper Mill Workers ("IUPMW"), who retired after October of 1979, and who are alleged to have been in good standing with the IUPMW at the time of their retirement.  Complaint, at  ¶1.  Until approximately November of 2003, the IUPMW was the exclusive bargaining representative for the unionized workers at the Blandin Paper Mill ("Blandin"), which is located in Grand Rapids, Minnesota.  Id., at ¶4.  In November of 2002, the unionized employees at Blandin voted to designate the Defendant Teamsters, AFL-CIO, Local 346 ("Local 346"), as their exclusive bargaining representative and, on April 21, 2003, the IUPMW dissolved itself by filing a Terminal Report with the Department of Labor ("DOL"), which informed the DOL that it "ceased to exist."  Id., at ¶¶9 and 10.

The Complaint further alleges that the constitution and bylaws of the IUPMW contained a "Standing Rule," which provided as follows:

> If the IUPMW is dissolved due to union employees voting in an international union * * * or for any other reason, all property, real, personal or mixed, shall be sold * * *. All funds obtained from the sale of property owned by the Independent Union of Paper Mill Workers shall be placed in the general fund * * *. After payment of the debts and obligations of the Independent Union of Paper Mill Workers, the remaining funds shall be distributed equally among the union members in good standing at the time of dissolution, and retired union members who retired after October of 1979 and were in good standing at the time of retirement.

Complaint, at ¶8.

The Plaintiffs allege that, following the dissolution of the IUPMW, rather than abiding by the provisions of the Standing Rule, the IUPMW entered into what it represented to be a "sale" of the union hall and its furniture, fixtures, and equipment, to Local 346, and to the Defendant Duluth Teamsters Building Association, Inc. ("Building Association"), which is a wholly-owned subsidiary of Local 346. However, the Plaintiffs allege that, rather than purchasing those facilities and other items with money, Local 346 set up a "subsidy fund" to pay the initiation fees and dues for the new Blandin employees who joined Local 346. Additionally, the Complaint alleges that the IUPMW distributed monies in its "Strike Fund" to "current" IUPMW members, which had been contributed to by IUPMW members, but that nothing was distributed to the IUPMW's retired members.

- 3 -

Referencing these transfers and distributions, the Plaintiffs allege as follows:

> As the defendants well knew and believed, the transfers and distributions described in paragraphs 12-14 above were in direct violation of the Standing Rule and designed, structured and intended to unjustly enrich Local 346, the Building Association and the active members of the IUPMW, at the expense of plaintiffs and members of the class.

Id., at ¶15.

Based upon those allegations, the Plaintiffs have asked the Court to rescind the alleged agreement, between the IUPMW, Local 346, and the Building Association, or, in the alternative, to conform the agreements to the requirements of the Standing Rule, by awarding them the monies to which they would have been entitled under the Standing Rule or, in the alternative, a sum of not less than $50,000.00.

The Plaintiffs' action was initially filed in the State District Court, in St. Louis County, Minnesota, and was removed on the Defendants' Petition for Removal. The Petition alleges that the Court has subject matter jurisdiction over the Plaintiffs' claim, under Title 29 U.S.C. §1985, since the claim involves a "violation of contracts between two labor organizations, founded directly on rights created by collective bargaining agreements and claims substantially dependent on analysis of collective bargaining agreements." Petition for Removal, at ¶4. Title 29 U.S.C. §1985 is the

codification of Section 301 of the Labor Management Relations Act ("LMRA"). The Plaintiffs' Motion to Remand challenges the propriety of the removal under Section 301 and, if successful, the Plaintiffs seek an award of costs and attorneys' fees pursuant to Title 28 U.S.C. §1447(c).

## III.  Discussion

A.  <u>Standard of Review</u>.  In relevant part, Title 28 U.S.C. §1441(a), which governs the removal of State Court matters to Federal Court, provides as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Following removal, a case will be remanded to State Court "'[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction * * * *.'" <u>Lundeen v. Canadian Pacific Railway Co.</u>, 342 F. Supp.2d 826, 828 (D. Minn. 2004), quoting <u>Title 28 U.S.C. §1447(c)</u>.

"'Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant'" and, "[a]bsent diversity of citizenship, federal-question jurisdiction is governed by the 'well-pleaded complaint

rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Magee v. Exxon Corp., 135 F.3d 599, 601 (8th Cir. 1998), quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987); see also, Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d 536, 542-43 (8th Cir. 1996). "In reviewing a Motion to Remand, the District Court must resolve all doubts in favor of a remand to State Court, and the party opposing a remand bears the burden of establishing Federal jurisdiction." Peterson v. BASF Corporation, 12 F. Supp.2d 964, 968 (D. Minn. 1998), citing In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993); Masepohl v. American Tobacco Co., 974 F. Supp. 1245, 1249 (D. Minn. 1997). "[J]urisdiction may not be sustained on a theory that the Plaintiff has not advanced." Lundeen v. Canadian Pacific Railway, supra at 829, quoting Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 809 (1986).

The doctrine of complete preemption comprises an "independent corollary" to the well-pleaded Complaint rule. Caterpillar, Inc. v. Williams, supra at 393. "Under this doctrine, '[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" Magee v. Exxon, Corp., supra

at 601-602("The complete preemption doctrine applies only when a federal statute possesses '"extraordinary preemptive power," a conclusion courts reach reluctantly,'" quoting Gaming Corp. of America v. Dorsey & Whitney, supra at 543, quoting, in turn, Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987); see also, Blaylock v. Hynes, 104 F. Supp.2d 1184, 1187 (D. Minn. 2000).

    B.   Legal Analysis.   Section 301(a) of the LMRA provides as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Under United States Supreme Court precedent, the doctrine of "complete preemption" applies to State law claims that fall within the purview of this provision. See, Caterpillar, Inc. v. Williams, supra at 394 ("[T]he pre-emptive force of [Section] 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization,'" as "[a]ny such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301."), quoting Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California, 463

- 7 -

U.S. 1, 23 (1983); <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 64 (1987).

Accordingly, removal, under Title 28 U.S.C. §1441, is proper where Section 301

applies.  See, <u>DeSantiago v. Laborers International Union of North America, Local

No. 1140</u>,  914 F.2d 125, 128-129 (8th Cir. 1990).

Section 301(a) will completely preempt the Plaintiffs' action if it is "for

violation of [a] contract[] * * * between an employer and a labor organization * * *

or between any such labor organizations."  See, <u>Title 29 U.S.C. §185(a)</u>.  Contrary to

the allegations contained in the Defendants' Petition for Removal, the Plaintiffs'

claims are not founded on a collective bargaining agreement, but on the Standing Rule

contained in the IUPMW Constitution.[1]  Accordingly, we limit our analysis to whether

the Plaintiffs' claim is for violations of a contract between labor organizations.

As an initial matter, both the Supreme Court, and our Court of Appeals, have

recognized that a union's constitution, or charter, is a "contract" for purposes of

determining Federal subject matter jurisdiction under Section 301(a).  See, <u>United

---

[1]While the Plaintiffs' allegation, that the IUPMW and Local 346 and the
Building Association "entered into a sweetheart deal," would appear to reference a
contract between labor organizations, the Plaintiffs have not alleged a "violation" of
that contract, but only a violation of the Standing Rule.  In reality, the Defendants,
other than the IUPMW, have been sued for unjust enrichment, and not because a
contract between labor organizations has been breached.

Association of Journeymen & Apprentices of the Plumbing and Pipefitting Industry v. Local 334, 452 U.S. 615, 624 (1981); DeSantiago v. Laborers International Union of North America, Local No. 1140, supra at 128.  Therefore, the Plaintiffs' claims are based on a "contract" for purposes of Section 301.

However, in order to invoke Federal Jurisdiction under Section 301(a), the contract at issue must be "between * * * labor organizations."  See, Wooddell v. International Brotherhood of Electrical Workers, Local 71, 502 U.S. 93, 98-99 (1991). In Wooddell, the Supreme Court addressed whether Section 301(a) extended jurisdiction to a suit brought by an individual union member, against a local union, for violations of the constitution of the international union with which the local union was affiliated.  Id. at 95-96.  The Court held that jurisdiction under Section 301(a) was present, reasoning as follows:

> It is clear that petitioner charged a violation of a contract between two unions within the meaning of [Section 301]. His amended complaint alleged that the constitution of the [international union] requires "all Local Unions to live up to all collective bargaining agreements" and that the [international union] Constitution and the bylaws of [the local union] "are contracts which are binding upon [the local union]."  * * *  Petitioner also alleged generally that the defendants had breached the above-mentioned contracts; more specifically, he alleged that he had been discriminated against in hiring-hall job referrals, contrary

> to the applicable collective-bargaining agreements and
> contrary to the [international union] Constitution.
>
> \*   \*   \*
>
> [U]nion constitutions are an important form of contract
> between labor organizations.    Members of a
> collective-bargaining unit are often the beneficiaries of
> such interunion contracts, and when they are, they likewise
> may bring suit on these contracts.

Id. at 100-101.

Given the specific language of Section 301(a) concerning contracts "between * * *

labor organizations, and the Supreme Court's reliance on that language, in Wooddell,

in determining the presence of Federal Subject Matter Jurisdiction under Section 301,

several Courts have held that Section 301(a) does not encompass suits predicated upon

the violation of provisions contained in a local union's constitution.  See, Korzen v.

Local Union 705, International Brotherhood of Teamsters, 75 F.3d 285, 288 (7th Cir.

1996); DaShields v. Robertson, 2000 WL 564024 at *2 n. 2 (4th Cir., May 10, 2000);

Bermingham v. Castro, 1999 WL 644342 at *1 (9th Cir., August 24, 1999); Brown v.

Local 701 of the International Brotherhood of Electrical Workers, 996 F. Supp. 781,

785-86 (N.D. Ill. 1998); Dinuzzo v. Local 79, Laborers International Union of North

America, 2003 WL 21378596 at *2-3 (S.D. N.Y., June 16, 2003); Ranker v.

International Union of Operating Engineers, Local 18, 2003 WL 403182 at *8-9 (N.D.

Ohio, January 24, 2003).

    In so holding, the Court, in Korzen, observed:

> Union constitutions have been held to be contracts within
> the scope of section 301 and members of the union held
> entitled to sue to enforce the contract-constitution as
> third-party beneficiaries.  United Ass'n of Journeymen &
> Apprentices v. Local 334, 452 U.S. 615, 101 S.Ct. 2546, 69
> L.Ed.2d 280 (1981); Wooddell v. International Brotherhood
> of Electrical Workers, 502 U.S. 93, 112 S.Ct. 494, 116
> L.Ed.2d 419 (1991); Shea v. McCarthy, 953 F.2d 29, 30-31
> (2d Cir.1992).  But in each of these cases it was the
> constitution of an international union that was at issue, and
> an international union is plausibly conceived of as a
> contractual union of its locals.  Wooddell and Shea do not
> emphasize the international character of the unions whose
> constitutions were in issue in those cases, but it is plain
> from the Journeymen case, which established the principle
> that a union's constitution can be a contract between labor
> organizations within the meaning of section 301, that the
> basis for it is the fact that an international's constitution is
> a contract between the international and its locals. * * * The
> constitution of a local union, in contrast, is a contract
> between the union and its members, Talton v. Behncke, 199
> F.2d 471, 473 (7th Cir.1952); Simoni v. Civil Service
> Employees Ass'n, Inc., 133 Misc.2d 1, 507 N.Y.S.2d 371,
> 377 (S.Ct.1986), in the same way that a corporate charter is
> a contract between the corporation and its shareholders (as
> well as between the state and the corporation and among
> the shareholders).  Staar Surgical Co. v. Waggoner, 588
> A.2d 1130, 1136 (Del.1991).  A suit on a contract between

> a labor organization and a member is not within the scope
> of section 301.

Korzen v. Local Union 705, International Brotherhood of Teamsters, supra at 288.[2]

Here, the Standing Rule at issue was contained in the IUPMW constitution, and

nothing in the allegations of the Plaintiffs' Complaint suggests that IUPMW

constitution was a contract between it, and another labor organization, or that the

IUPMW was even affiliated with any other labor organization.  Rather, the Standing

Rule was part of a contract between a labor organization and its members and, under

the analysis set forth in Korzen, the alleged violation of that contract does not

implicate, let alone establish, Federal Court Jurisdiction under Section 301.

The Defendants argue that the analysis in Korzen is unpersuasive, in that it is

contrary to the law of this Circuit.  In raising that argument, the Defendants primarily

rely on our Court of Appeals' holding in DeSantiago v. Laborers International Union

of North America, Local No. 1140, supra.  In DeSantiago, the plaintiffs, who were

individual members of a union, commenced an action in State Court against their local

union.  Their Complaint alleged, inter alia, that the local union had violated their

---

[2]While the Plaintiff in Korzen was an employee of the union, rather than a
union member, the Court's analysis has been applied to claims that were brought by
union members, see, Brown v. Local 701 of the International Brotherhood of
Electrical Workers, 996 F. Supp. 781, 785-86 (N.D. Ill. 1998), and therefore, such a
distinction is not material to our analysis of the Plaintiffs' claims.

rights under the local and international union constitutions.  Id. at 127.  The local union removed the case, and Summary Judgment was granted in the union's favor. On appeal, the plaintiffs argued that removal was improper because the face of the Complaint did not state a Federal question.  The Court disagreed and found that the case fell within the ambit of Section 301(a), and therefore, removal was proper under the doctrine of complete preemption.

DeSantiago was decided prior to Wooddell, and the Court did not specifically discuss the limiting language of Section 301(a) which isolates contracts "between * * * labor organizations."  The Court merely concluded that, "[b]ecause [the plaintiffs] have alleged claims against the Local based upon the local and international constitutions, we hold that those claims were preempted by section 301(a)."  Id. at 128.  However, in light of the fact that the suit involved  a local union's alleged deprivation of rights created by an international constitution,  DeSantiago's holding is consistent with Wooddell, as the claim involved alleged violations of a "contract" that was "between labor organizations."  See, International Brotherhood of Electrical Workers, Local  640 v. Dueck, 148 F. Supp.2d 955, 963 (D. Ariz. 2000)(noting the

consistency of <u>DeSantiago</u> and <u>Wooddell</u>).[3]   Accordingly, <u>DeSantiago</u> does not specifically address the circumstances presented here, where the Plaintiffs' claim is predicated solely upon a local union's violation of its own constitution, and our independent research has uncovered no Eighth Circuit precedent on that precise issue.

We find the Seventh Circuit's analysis, in <u>Korzen</u>, to be persuasive, in that it is consistent with both the text of Section 301(a), and the Supreme Court's analysis in <u>Wooddell</u>.  Specifically, we are unable to ignore the language of Section 301(a), in order to find that Federal Jurisdiction is present, notwithstanding the absence of a contract "between * * * labor organizations."   Accordingly, the absence of such a contract here -- where the sole basis for the Plaintiffs' claim is the IUPMW's alleged violation of a provision of its own constitution -- precludes the invocation of Federal Court Jurisdiction under Section 301(a).

The Defendants advance an alternative argument by contending that the Plaintiffs' Complaint presents a Federal question, on its face.   Specifically, the

---

[3]The Court's analysis in <u>International Brotherhood of Electrical Workers v. Dueck</u>, 148 F. Supp.2d 961 (D. Ariz. 2000), was cited favorably by a Court within our Circuit -- the District Court for the Western District of Missouri -- for the proposition that, under <u>Wooddell</u>, a suit brought by a local union against its individual members was not preempted, under Section 301, because it was not a suit "between labor organizations."   See, <u>International Brotherhood of Electrical Workers, Local Union No. 53 v. McPhetridge</u>, 2004 WL 3254739 at *2 (W.D. Mo., July 19, 2004).

Defendants direct our attention to the Plaintiffs' allegation that the "transfers and distributions" of IUPMW assets "were a direct violation of the Standing Rule and were designed, structured and intended to unjustly enrich [the Defendants], at the expense of the plaintiffs and members of the class," Complaint, at ¶15, and therefore, the Defendants urge, that "all questions as to the union's actions in regard to dissolution of the IUPMW, distribution of the union funds and assets, and decisions to use those funds for current members are governed by federal statutes." Defendants' Memorandum in Opposition to Plaintiff's Motion to Remand to State Court, at p. 6. The Defendants cite to Title 29 U.S.C. §§186 and 501, in support of their argument, and maintain that Federal Jurisdiction must be exercised in order to promote the uniform application of those statutes.  The Defendants have also noted that the Plaintiffs are attempting to recover on a bond, which the Defendant IUPMW was required to maintain under Federal law.  See, Title 29 U.S.C. §502(a).

Unfortunately for the Defendants' argument, "the party opposing remand has the burden of establishing federal subject matter jurisdiction," Green v. Ameritrade, Inc., 279 F.3d 590, 596 (8th Cir. 2002), and "an allegation of jurisdiction entirely absent from the Notice of Removal may not be supplied outside of the 30-day period

[set forth in Title 28 U.S.C. §1446(b)]."[4]   Iceland Seafood Corp. v. National

Consumer Cooperative Bank, 285 F. Supp.2d 719, 727 (E.D. Va. 2003), citing

Tichner v. Insurance Co. of the State of Pennsylvania, 268 F. Supp.2d 666, 668 (E.D.

Va. 2003); see, McNerny v. Nebraska Public Power District, 309 F. Supp. 2d 1109,

1115 (D. Neb. 2004)("After that thirty-day period the notice may be amended to add

specific facts which further explain the grounds for removal stated in the original

removal notice, but not to add a completely new basis for removal jurisdiction."),

citing Lastih v. Elk Corp. of Alabama, 140 F. Supp.2d 166, 168 (D. Conn. 2001);

Blakeley v. United Cable System, 105 F. Supp.2d 574, 578 (S.D. Miss. 2000); Briar

Patch Ltd ., L.P. v. Pate, 81 F. Supp.2d 509, 517 (S.D. N.Y. 2000); see also, Jones v.

Kremer, 28 F. Supp.2d 1112, 1113 (D. Minn. 1998)(recognizing the "national trend

of allowing amendments for 'technical defects,' but not for 'substantial defects,' [in

a Petition for Removal].");   Title 28 U.S.C. §1446(a)(requiring that a Petition for

Removal contain "a short plain statement of the grounds for removal * * * *.").

---

[4]In pertinent part, Title 28 U.S.C. §1446(b) requires that a notice of removal be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceedings is based * * * *."

Accordingly, while the Defendants may urge that we overlook "technical defects" in their Petition for Removal, they may not now assert an entirely different jurisdictional ground for removal.  See, <u>Schepis v. Local Union No. 17, United Brotherhood of Carpenters and Joiners of America</u>, 989 F. Supp.2d 511, 516 (S.D. N.Y. 1998).  In <u>Schepis</u>, the Plaintiff, who was a former union officer, filed a State law claim against the union for its failure to indemnify him for his legal costs in defending himself, in a criminal action for bribing another union official, which was ultimately dismissed.  <u>Id.</u> at 513.  The defendant union removed the action, asserting that the claim raised substantial questions under Title 29 U.S.C. §501(b). Additionally, in its opposition to the plaintiff's Motion to Remand, the defendant argued that removal was proper under Section 301 of the LMRA.  <u>Id.</u> at 516.  Under those circumstances, the Court held that the Section 301 argument was waived "because the Union failed to identify [Section] 301 as a basis for removal in its petition; rather the union raised this jurisdictional ground for the first time in opposing [the plaintiff's] remand motion."  <u>Id.</u>, citing <u>Wyant v. National Railroad Passenger Corp.</u>, 881 F. Supp. 919, 924-25 (S.D. N.Y. 1995).

Here, the Defendants' Notice of Removal exclusively relies on Section 301 as the grounds for Removal, and there is nothing in the Record to suggest that any other

ground for Removal was being asserted until the service of the Defendants' opposition memorandum to the Plaintiffs' Motion to Remand.  Accordingly, in a manner similar to the defendants in Schepis, the Defendants have waived any arguments based on Title 29 U.S.C. §§186 and 501, or on the Plaintiffs' attempt to recover on a bond that was required by Title 29 U.S.C.§502.  Nevertheless, in the interests of completeness, we address the Defendants' arguments pertaining to Sections 186, 501, and 502, which we find to be ineffective in supporting the removal of the Plaintiffs' action.

The Supreme Court has recently reiterated that a Federal cause of action need not be pled in order to invoke Federal question jurisdiction, but that, because both Section 1331 and 1441(a) include claims "arising under" Federal law, "in certain cases federal question jurisdiction will lie over state law claims that implicate significant federal issues."   Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, --- U.S. ---, 125 S.Ct. 2363, 2367 (2005), citing Hopkins v. Walker, 244 U.S. 486, 490-91 (1917); see, Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199 (1921).  "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of Federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  Id.

However, this does not mean that a State law claim becomes removable simply because it may involve an issue of Federal law.  As the Court, in <u>Grable</u>, recognized, "[i]t has in fact become a constant refrain * * * that federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum."  <u>Id.</u>, citing <u>Chicago v. International College of Surgeons</u>, 522 U.S. 156, 164 (1997); <u>Merrell Dow Pharmaceuticals, Inc. v. Thompson</u>, supra at 814, and n. 12; <u>Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California</u>, supra at 28.  Moreover, "even when [a] state action discloses a contested and substantial federal question, the exercise of federal jurisdiction * * * [must be] consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of [Section] 1331."  <u>Id.</u>  "[T]he presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction."  <u>Id.</u>, citing <u>Merrell Dow Pharmaceuticals, Inc. v. Thompson</u>, supra at 810.

Therefore, under <u>Grable</u>, a party who seeks to invoke Federal Court Jurisdiction must show that the claim upon which jurisdiction is predicated "necessarily raise[s]

a stated federal issue, actually disputed and substantial, which a federal forum may

entertain without disturbing any congressionally approved balance of federal and state

judicial responsibilities."  Id. at 2368; see, Baker v. CDO Seidman, LLP, 390 F.

Supp.2d 919, 921 (C.D. Cal. 2005).  "[T]he absence of a federal private right of action

[is] relevant to, but not dispositive of, the 'sensitive judgments about congressional

intent' that [Section] 1331 requires." Id. at 2370.[5]

---

[5]The Court's analysis, in Grable, appears to be a clarification of its ruling in
Merrell Dow Pharmaceuticals Co. v. Thompson, 478 U.S. 804 (1986).  In Merrell
Dow, the Court held that removal was improper where a violation of the Federal Food,
Drug, and Cosmetics Act ("FDCA") was alleged, in a State tort law claim, in order to
create a "rebuttable presumption" of proximate cause under State law. Id. at 805-06,
817.  In so holding, the Court focused heavily on the absence of a private Federal
cause of action for violations of the FDCA, and noted that "it would * * * flout, or at
least undermine, congressional intent to conclude that the federal courts might * * *
exercise federal-question jurisdiction and provide remedies for violations of that
federal statute solely because the violation of the federal statute is said to be a
'rebuttable presumption' or 'proximate cause' under state law, rather than a federal
action under federal law," and "[g]iven the significant of the assumed congressional
determination to preclude federal private remedies, the presence of a federal issue as
an element of the state tort is not the kind of adjudication for which jurisdiction would
serve congressional purposes and the federal system." Id. at 812, 814.

In Grable, the plaintiff had brought a quiet title action which raised a contested
issue of a Federal tax law, and for which Congress has not created a private Federal
cause of action.  Grable & Sons Metal Products, Inc. v. Darue Engineering &
Manufacturing, --- U.S. ---, 125 S.Ct. 2363, 2368, 2370 (2005).  In distinguishing
Merrell Dow, the Court clarified that, in addition to the absence of a private Federal
cause of action, the result in Merrell Dow was predicated on the absence of
preemption of State law remedies, and a belief that, considering "the 'increased

- 20 -

Here, the Defendants maintain that the Plaintiffs' claims are governed by Title 29 U.S.C. §§186 and 501. Section 501 was enacted as part of the Labor Management Reporting and Disclosures Act ("LMRDA"), and sets forth the fiduciary duties of labor union officers to the union, and to its members. In Section 501(b), Congress created a Federal cause of action for union members against union officials, for violations of those fiduciary duties, where the union itself refuses to take action, and leave of the Court has been obtained. Section 501(b) also allows such claims to be brought in "any State court of competent jurisdiction."[6]   However, while Section 501(b) provides union members with such a cause of action, Congress has made clear that, in enacting the LMRDA, it did not intend to deprive union members of any State law causes of action. Specifically, Title 29 U.S.C. §523(a), which was enacted as Section 603(a) of the LMRDA, provides as follows:

---

volume of federal litigation,'" Congress could not have intended to open the Federal Court forum to all garden variety State law tort claims, which happened to require an interpretation of Federal law. Id. at 2371. The Court went on to distinguish the facts of its case from Merrell Dow, noting that, while Congress had not created a private Federal cause of action for the plaintiff's claim, "it is the rare state quiet title action that involves a contested issue of federal law." Id.

[6]See the Appendix at the close of this Opinion for the language of Title 29 U.S.C. §501(a) and (b).

> Except as explicitly provided to the contrary, nothing in
> this chapter shall reduce or limit the responsibilities of any
> labor organization or any officer, agent, shop steward, or
> other representative of a labor organization, or of any trust
> in which a labor organization is interested, under any other
> Federal law or under the laws of any State, and, except as
> explicitly provided to the contrary, nothing in this chapter
> shall take away any right or bar any remedy to which
> members of a labor organization are entitled under such
> other Federal law or law of any State.

In interpreting the LMRDA, the Supreme Court has recognized that Section 603(a) is "'an express disclaimer of pre-emption of state laws regulating the responsibilities of union officials, except where such preemption is expressly provided [by the LMRDA].'" Brown v. Hotel and Restaurant Employees and Bartenders International Union Local 54, 468 U.S. 491, 505-506 (1986), quoting De Veau v. Braisted, 363 U.S. 144, 157 (1960). The majority's recognition, in De Veau, that the LMRDA does not generally preempt State law was also recognized in the concurrence by Justice Brennan, De Veau v. Braisted, supra at 160-161 (acknowledging that the LMRDA "explicitly provides that it shall not displace legislation of the States"), and in the dissents if Justices Douglas, Warren, and Black. Id. at 164, n. 4 (noting that Section 603(a) "has reference to the fiduciary responsibilities created by [Section] 501 of the Act, and make clear that these provisions of federal law do not pre-empt state law.").

The dissenting Justices also quoted from the legislative history of the LMRDA for the

proposition that, as a result of Section 603(a), "[i]ndividual union members will

therefore have a choice between suing in the State courts under the common law or

invoking the provisions of the federal statute." Id., quoting S. Rep. No. 86-187, 86th

Cong., 1st Sess. (1959), reprinted in 1959 U.S.Code Cong. & Admin.News 2318,

2336. This choice of forums is also reflected in the text of Section 501(b), which

provides that suits may be brought "in any district court of the United States or in any

State court of competent jurisdiction."

Given the Congressional directive, which is contained in Section 603(a), and

the Supreme Court precedent which acknowledges the viability of State law causes

of action concerning conduct that is otherwise encompassed by the LMRDA, at least

one Federal Court has found that removal is improper under Section 501(b), where a

Plaintiff has proceeded with a claim on State law grounds, reasoning as follows:

> At best, the Union's assertion that [Section] 501(b)
> provides the sole basis for [the plaintiff's] reimbursement
> claim is a defensive allegation, which furnishes no basis for
> removal. * * * Furthermore, even if [the plaintiff] could
> have sought reimbursement on federal as well as state
> grounds, as master of his complaint he exercised his right
> not to do so.

Schepis v. Local Union No 17, United Brotherhood of Carpenters and Joiners of

America, supra at 515-516; Cf., Caterpillar Inc. v. Williams, supra at 392 ("[T]he

- 23 -

plaintiff is the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.").

Here, the Plaintiffs have not alleged a claim against the officials of the Defendant unions for acting in derogation of their fiduciary duties under Section 501(a). Instead, the Complaint alleges that the IUPMW violated the Plaintiffs' rights, under the union constitution -- i.e. contract -- and that Local 346, the Building Association, and the current members of the IUPMW, were unjustly enriched by that violation. Accordingly, while it is entirely possible that evidence may be proffered concerning the obligations of the officials of the Defendant Unions, under Section 501, the merits of the Plaintiffs' claim will be decided on the basis of State contract law. Accordingly, to the extent that the Plaintiff's claim will require the interpretation of Section 501, we harbor significant doubt that the Plaintiff's claim "necessarily raise[s] a stated federal issue, actually disputed and substantial."[7]

---

[7]The allegations contained in the Plaintiffs' Complaint suggest that they will attempt to recover their damages from a bond that the IUPMW was required to maintain under Title 29 U.S.C. §502(a). Section 502(a) requires that every union officer be bonded to protect against "loss by reason of acts of fraud or dishonesty on his part directly or through connivance with others." As a result, in their attempt to recover on the bond, the Plaintiffs may seek to introduce evidence concerning fraud or dishonesty of officials from the Defendant Unions, which may, in turn, encompass conduct that is violative of those officials' fiduciary duties under Section 501(a)

Moreover, given the express language of Section 603(a), as well as the Supreme Court's construction of that language, even if the Plaintiffs' claim could be construed as raising a "substantial" Federal issue as to the fiduciary duties of the officials with the Defendant unions under Section 501, the exercise of Federal jurisdiction, would nonetheless be improper, as it would be disruptive to a "congressionally recognized balance of federal and state judicial responsibilities."  See, Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, supra at 2368; see also, Schepis v. Local Union No. 17, United Brotherhood of Carpenters and Joiners of America, supra at 516.

Section 502(a) was enacted as part of the LMRDA, and requires that every union officer be bonded to protect against "loss by reason of acts of fraud or dishonesty on his part directly or through connivance with others."  Title 29 U.S.C. §502(a).  However, there is nothing in the statute to suggest that the bond is meant to protect only against Federal law violations, and such an interpretation would be contrary to the congressional directive contained in Section 603(a), as well as the language of 501(b), which allows claims to be brought in State Courts of competent jurisdiction.  As such, we decline to construe the Plaintiffs' attempt to recover on such

a bond as raising a substantial Federal issue, which would justify the invocation of Federal Court jurisdiction.

The Defendants have also asserted that the Plaintiffs' claim presents a Federal Question, under Title 29 U.S.C. §186, which is the codification of Section 302 of the LMRA.   Section 302 makes it a criminal violation for someone, who has access to union funds, to willfully use those funds for the benefit of himself, or for persons whom he knows are not entitled to the benefit of those funds.  However, the Plaintiff has not alleged a violation of Section 302 and, given that the predicate for the Plaintiffs' cause of action is the Standing Rule, as opposed to an illegal transfer, it is not evident from the Plaintiffs' Complaint that the construction of Section 302 is a contested matter in the Plaintiffs' claims.  Therefore, unlike the claim in <u>Grable,</u> where "the meaning of the federal statute * * * appear[ed] to be the only legal or factual issue contested in the case," see, <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u>, supra at 2368, it does not appear that the interpretation of Section 302 is "actually contested," or that the Plaintiffs' claims present a "substantial issue" under Section 302.   Accordingly, we find no merit to the Defendants' argument that Section 302 provides a basis for removal jurisdiction. See, <u>Acker v. AIG International, Inc.</u>, --- F. Supp.2d ----, 2005 WL 2994778 at *3 (S.D.

Fla., November 8, 2005)(remanding case where the Complaint "did not call into question the interpretation of federal * * * law."); Sarantino v. American Airlines, Inc., 2005 WL 2406024 at *7 (E. D. Mo. September 29, 2005)(remanding State tort claims "resting only in part on the allegation that the Defendants may have violated federal [law].").

Under the analysis set forth in Grable, and Merrell Dow, our conclusion is further supported by the absence of a congressionally created private Federal cause of action for violations of Section 302 which would encompass the Plaintiffs' claims. Specifically, while Section 302(e) provides Federal Court jurisdiction, "to restrain violations of this section," it "provides no private cause of action for damages resulting from a violation of [Section] 302." American Commercial Barge Lines Co. v. Seafarers International Union of North America, 730 F.2d 327, 332 (5th Cir. 1984); see, Central States, Southeast and Southwest Area Pension Fund v. Admiral Merchants Motor Freight, Inc., 511 F. Supp. 38, 46 (D. Minn., 1980), affirmed, sub nom. Central States, Southeast and Southwest Area Pension Fund v. Jack Cole Dixie Highway Co., 642 F.2d 1122, 1123 (8th Cir. 1981)(finding the opinion of the District Court to be "correct in every material respect."); Bakerstown Container Corp. v. International Brotherhood of Teamsters, Chauffeurs, Warehouseman, and Helpers,

884 F.2d 105, 108 (3rd Cir. 1989); <u>Award Services, Inc. v. Northern California Retail Clerks Union and Food Employers Joint Pension Trust Fund</u>, 763 F.2d 1066, 1070 (9th Cir. 1985); see also, <u>Sellers v. O'Connell</u>, 701 F.2d 575, 578 (6th Cir. 1983).  Here, part of the relief requested by the Plaintiffs includes an award of damages equal to each of the Plaintiff's pro rata share of the funds and assets of the IUPMW or, alternatively, a sum not less than $50,000.00.  <u>Complaint</u>, at p. 5, ¶¶1 and 2.  As such, the Plaintiff's claim is not encompassed within Section 302(e).

In sum, we find that the Plaintiffs' State law claims are not preempted by Section 301(a), and that the Defendants have waived any other arguments for removal, based on their failure to include those grounds in their Petition for Removal. Moreover, even considering the Defendants' other argument -- that Federal Court jurisdiction is furnished by the operation of Title 29 U.S.C. §§186, 501 and 502 -- we find that the exercise of removal jurisdiction would be improper as the Defendants have failed to satisfy their burden of establishing that the Plaintiffs' claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and

state judicial responsibilities."[8]  See, <u>Grable & Sons Metal Products, Inc. v. Darue</u>

<u>Engineering & Manufacturing</u>, supra at 2368.  Therefore, we find that the Defendants'

removal of the Plaintiff's action was improper, and we recommend that the Plaintiffs'

Motion be granted, and that this action be remanded to the Minnesota State Court for

the Sixth Judicial District, and we turn to the issue of attorneys' fees.

   When an action is erroneously removed to Federal Court, and the removal

results in a remand to State Court, costs are properly assessed against the removing

party.  See, <u>In re Iowa Manufacturing Co.</u>, 747 F.2d 462, 463 n. 2 (8th Cir. 1984);

<u>American United Life Ins. Co. v. Franklin</u>, 97 F.2d 76 (8th Cir. 1938).  Under Title 28

U.S.C. §1447(c), "[a]n order remanding the case may require payment of just costs

and any actual expenses, including attorney fees, incurred as a result of the removal."

---

   [8]We are also unpersuaded by the Defendants' argument that the exercise of
Federal Court jurisdiction is necessary in order to allow for the uniform application
of Federal labor law principles.  Specifically, in addressing a similar argument, the
United States Supreme Court has observed as follows:

> Petitioner's concern about the uniformity of interpretation,
> moreover, is considerably mitigated by the fact that, even
> if there is no original district court jurisdiction for these
> kinds of action, this Court retains power to review a federal
> issue in a state cause of action.

<u>Merrell Dow Pharmaceuticals, Inc. v. Thompson</u>, 478 U.S. 804, 815 (1985), citing
<u>Moore v. Chesapeake & Ohio Railway Co.</u>, 291 U.S. 205, 214 (1934).

Plainly from the language employed in the statute, under Section 1447(c), we have discretion to order the payment of costs and attorney's fees. While we conclude, and recommend, that remand is warranted under the circumstances of this case, the removal issue appears to be one of first impression in this Circuit, and we are presented with an arguably meritorious basis for removal. Under such circumstances, as an exercise of discretion, we conclude that an award of attorney's fees would be inappropriate, and therefore, we recommend that the Plaintiffs' request for such fees be denied.

NOW, THEREFORE, It is –

RECOMMENDED:

1. That the Plaintiffs' Motion to Remand [Docket No. 7] be granted, and that the Clerk of Court be directed to remand this matter back to the Minnesota District Court for the Sixth Judicial District, in the County of St. Louis, Minnesota.

2. That the Plaintiffs' request for costs and attorney's fees be denied.

Dated: November 28, 2005          *s/Raymond L. Erickson*
                                  Raymond L. Erickson
                                  CHIEF U.S. MAGISTRATE JUDGE

NOTICE

- 30 -

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than December 15, 2006**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than December 15, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.

APPENDIX

Title 29 U.S.C. §501(a) and (b) provide as follows:

> (a) Duties of officers; exculpatory provisions and resolutions void
>
> The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.
>
> (b) Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses

When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.